DEN, ON THE DEMISE OF TUCKER AND WIFE, AND MUL-
GATROYD AND WIFE, v. WHITE.

A took possession of an island in the river Delaware, built a small house upon it, and occasionally, during twenty years, repaired to it for the purpose of study, but some years before his death removed the house away from the island, having made no other improvement. Ten years after, B took possession, fenced and improved the property, and he, together with those claiming under him, held possession for more than twenty years. The possession of B is good against the title of A.

This was an action of ejectment, brought to recover a certain island situate in the river Delaware, about two miles above Trenton. It was tried at bar.

On the trial, it appeared from the evidence of the plaintiff that one Gould, who resided and owned property in the State of New Jersey on the shore adjacent to the island, about twenty years before his death had taken a kind of possession of the property in controversy. He built a small house on it, which was called his study, in which he kept a table and some books, and occasionally repaired there for the purpose of studying. There was no evidence that he ever slept there, but his family resided on his property on the adjacent shore. Gould made no further improvements on the land, and some [95] time previous to his death, he removed the study away from the island. During the whole period in which he held this possession, the neighbors were in the habit of driving their cattle upon the island, and no exclusive appropriation was claimed by any one. It appeared that a possession of a similar kind continued in Gould's widow and children after his death, in 1743, until some time in the year 1755, when, as it was alleged, one Logan ousted Gould's family from the possession, and he and those claiming under him have since retained it. The lessors of the plaintiff claim under Gould, by virtue of a deed dated in March, 1786, from the heir-at-law of Gould to Samuel Tucker. This conveyance recited a preceding one, made in the year 1776, which, it was alleged, had been captured by the British, and lost or destroyed. Upon this evidence the plaintiff rested.

The defendant then went into proof of his title. He relied upon a possessory right under Logan, who, it was proved, had possession of the property in 1755, built a house upon it, fenced and improved it. A paper was produced, purporting to be articles of agreement between William Logan and Henry Bristol, dated September 6th, 1766, by which Logan conveyed all his right, improvements and possession ; but the instrument was without seal. Its admission in evi-

Den, ex dem. Tucker et al., v. Whi.e.

dence was objected to, but the objection was overruled by the court, and a bill of exceptions taken. Bristol conveyed to Ridley. Ridley, January 18th, 1775, conveys his title to this property and some other things to William Yardley, for the consideration of £100. Yardley conveyed to John White, the defendant, in 1776, in consideration of £140.

By the parol testimony offered in behalf of the defendant, it appeared that the land was unappropriated, and used in common by the people in the neighborhood, before Gould built the house upon it. One Brian was the first who ever took possession of it, and lived on it in 1753 or 1754. Brian lived there a short time, when Logan, as witness thought, in 1755, came on to the island, built a house, fenced and improved it for the first time. Bristol, to whom Logan conveyed, planted some apple trees, tilled the land, and kept a cow.

[96] The defendant then offered to prove the nature and value of the improvements which had been made, but the evidence was overruled, and bill of exceptions prayed and allowed.

A motion was made for a non-suit, on the ground that the plaintiff had failed in proving any title to the land in dispute.

*Woodruff* and *R. Stockton*, for the plaintiff, contended—
1st. That they had shown a possession of twenty years.
2d. That the defendant had made out no title.

A possession once lawfully acquired, or gained in any manner, continues good, and gives a title until avoided. 16 *Viner* 455, *pl.* 5. A clear possession for twenty years is proof of a fee, if no other title appears. *Den* v. *Barnard*, *Cowp.* 595. So far as regards the possession on the part of the defendant, it appears that Logan, under whom he claims, entered upon the property without a color of right. The

H

family of Gould were not personally upon the land—they were most generally away from it, and during their absence the opposite party entered.   But a bare entry on another, without an actual expulsion, makes such a seisin only that the law will adjudge him in possession that has the right. *Salk.* 246, *pl.* 2.   If, then, this be the species of entry that was made by Logan, the lessors of the plaintiff are not barred by the subsequent possession on the part of the defendant since 1755.   The statute of limitations, which affords the only ground for such a pretence, never runs against a man, but where he is actually ousted or disseised.   *Reading* v. *Royston*, 2 *Salk.* 423.

The case of *Allen* v. *Rivington*, 2 *Saund.* 111, is strong in favor of the plaintiff's claim.   In that case it was considered, that as it appeared upon the record that the lessor of the plaintiff had a priority of possession, and there was no title found for the defendant, the plaintiff ought to recover. The priority of possession alone gives a good title to the lessor of the plaintiff against the defendant.   The language held in that case is precisely applicable to the one before the court.   In *Bateman* v. *Allen, Cro. El.* 437, upon a special verdict, " Williams, [97] Sergeant, moved that forasmuch as in all the verdict it is not found that the defendant had the *primier* possession, nor that he entered in the right, or by the command of any who had title, but it is found that he entered upon the possession of the plaintiff, without any title, his entry is not lawful, and the plaintiff had good cause of action against him, wherefore the plaintiff should recover— and so held all the court, that for this cause judgment ought to be given for the plaintiff." *Vaugh.* 209, is also in point. (*a*)

*Leake* and *Frelinghuysen*, for defendant.   The title set up by the lessor of the plaintiff rests altogether upon possession, and admitting for the present, that the nature of this possession and the circumstances attending it, are a sufficient ground to recover in this action, still as the possession or oc-

(*a*) See this point examined by the court in the case of *Smith, ex dem. Teller*, v. *Lorillard*, 10 *Johns.* 338, and the cases there referred to.

cupancy did not continue in the hands of Gould himself, it must prove defective. It is a rule of law that occupancy, and the rights acquired in that way, cease by death, and cannot descend as an inheritance to the heir. 2 *Bl. Com.* 10, 12, 13.

With regard to this particular species of property, it is distinguishable in many respects from land situate within the acknowledged boundaries of the different states. By the original grant from King Charles II. to the Duke of York, the crown granted to the duke, among other things, all the territory of New Jersey, " to the east side of the river Delaware." *Leaming & Spicer* 4. There is no conveyance of any islands situate in the river Delaware, but the eastern bank of that river is expressly made the western boundary of the territory thus conveyed. The same form of words, and the same limits are recognized by the Duke of York on the 24th of June, 1664, in a release by which he conveyed the province of New Cæsarea, or New Jersey, to John Lord Berkley and Sir George Carteret. *Leaming & Spicer* 8, 10. In this instrument, reference is made to the original grant, and the limits, expressly designated, and the part conveyed to the grantees is described as having upon the west, Delaware bay or river, without any kind of [98] mention of the islands. By the " Royal charter granted to William Penn, Esq., proprietary and governor of Pennsylvania," that province is described as " bounded on the east by Delaware river." 5 *Smith's Laws of Penn.* 496, *app.* 2.

These grants from the crown of Great Britain are universally recognized as the only foundation of every claim to land in these provinces, while they remained under the dominion of the mother country. If, then, the crown had a right to dispose of these lands, we are bound by the limits prescribed by the grants themselves, and prior to the Revolution, and the acquisition of rights by the states as independent sovereignties, the title to the islands in the Delaware remained in the crown, by whom they never had been disposed of. 2 *Bl. Com.* 105.

Prior, therefore, to the establishment of these provinces in a

state of independence, no legal title to the lands in question could have been acquired. Every entry must have been upon the king, and therefore tortious; every possession must have been illegal, and therefore could furnish no ground of title.

The plaintiff's claim, therefore, rests altogether upon a tortious occupancy, and he cannot appeal to the law for its support, when its foundation is a violation of law. 2 *P. Wm.* 75; *Blankard* v. *Galdy*, 2 *Salk.* 411; 4 *Mod.* 222.

If these remarks are supported by law, if the possession acquired by the plaintiff was tortious and illegal, neither party has any right of property, and our possession is good until a title of a higher nature is shown. If the original occupancy of Gould was invalid, his heirs cannot be in a better predicament than he himself stood in. Under our laws there are no estates of inheritance excepting those held in fee simple or fee tail. *Gore* v. *Gore*, 2 *P. Wm.* 28; 2 *Bl. Com.* 104, 201; *Co. Litt.*, §§ 1, 2, 3, 4, 9.

This original and palpable defect of title cannot be cured by any presumption of a title derived under the crown, because there is no such pretence set up, and no circumstances proved that would warrant the jury in drawing such an inference.

[99] The mere priority of possession gives no title in any case, except where no title on the other side is exhibited. Every claim on this ground is removed by twenty years' adverse possession. Lord Mansfield, in *Taylor* v. *Horde*, 1 *Burr.* 119, says: " An ejectment is a possessory remedy, and only competent where the lessor of the plaintiff may enter; therefore, it is always necessary for the plaintiff to show that his lessor had a right to enter, by proving a possession within twenty years, or accounting for the want of it under some of the exceptions allowed by the statute. Twenty years' adverse possession is a positive title to the defendant. It is not a bar to the action or remedy of the plaintiff only, but takes away his right of possession." So, also, *Runnington* 14 says: " Twenty years' adverse possession is not only a negative bar

to the action or remedy of the plaintiff, but a positive title to the defendant." Lord Mansfield, in *Cowper* 218, in the case of *Fisher and Taylor* v. *Prosser*, held that the denial of plaintiff's title is equivalent to an actual ouster, and makes the possession adverse.

But, without reference to the goodness of our title, we are entitled to the possession which we now hold, until the plaintiff not only proves our title bad, but his own good. He must recover, if he recovers at all, upon his own strength, and not upon our weakness. *Vaughan* 408.

*Woodruff* and *Stockton*, in reply. Reference has been made to the principle of occupancy, and it has been contended that Gould abandoned the right which he had acquired to the property in dispute, by relinquishing the possession. Rights acquired by mere occupancy are scarcely referable to the municipal law of any particular country, which always appropriates to every species of property a specific owner; but we should refer to the law of nature, as in many other cases, for the rules by which we should be governed. *Vattel, p.* 167, *B* 2, *c.* 11, § 141, expressly recognizes the right of the heir, or the wife, to the property which the ancestor or the husband acquired by occupancy. Even Blackstone, who has been referred to as supporting this principle, only states that one mode of terminating estates of this kind is by the death of the possessor, but he nowhere lays down the rule so [100] broadly as has been contended for. In this case, however, the question is of minor importance. The evidence of the possession by the family of Gould, after his death, is as strong and uncontradicted as his own possession during his life.

The merits of this question we shall, however, throw, for the present, entirely out of view, and examine—

1st. Whether the defendant has shown a subsisting title in any third person.

2d. Whether he has avoided the title set up by the plaintiff.

1st. The learned counsel, in their anxiety to defeat our

claim, acknowledged that they themselves have no right to the island in question. Upon their principles, the Indian aborigines are alone entitled to the property. We contend, however, that the crown, though not entitled to the usufruct of the soil, possessed not only executive jurisdiction, but the allodium. With regard to the claim of the state, it is obvious, from the uniform tenor of her legislative proceedings, that she claimed jurisdiction only, and never pretended to have any property in the soil. This appears, from the confirmation of the agreement entered into between the commissioners of Pennsylvania and New Jersey, with regard to these islands, in which no other claim than that of jurisdiction appears. *Wilson* 323. So also is the subsequent act, passed in consequence of this agreement between the states. *Wilson* 341. No title is therefore proved to exist in any other person.

2d. With regard to the title of the plaintiff, it is clear, from the evidence—and the facts do not appear to be disputed—that Gould built on the property in 1727 or 1728. His possession continued until his death in 1743. His widow then held the island, without being disturbed, until her death in 1749, and her children after her, until 1755, without any species of interruption.

We deny the fact of abandonment, which has been set up; but this is a question for the consideration of the jury.

It has been urged, also, that the possession of Gould is not such a possession as the law favors. We know of no distinction of this nature. He obtained it quietly and peaceably, and held it as he acquired it.

[101] It is also contended that, as this island was not expressly included within the grants, no legal right in it could be acquired. But if it was without a specific owner, we had a right to take possession. But the common law extended here under the authority of the cases from Peere Williams and Salkeld, and under that we had a right to enter upon land which had not been appropriated.

If this occupancy was lawfully acquired, there remains

little doubt that it may descend. *Grotius* 872, § 12, considers the possession of the heir as the same as the ancestor. *Dagge*, in his treatise on criminal law, *Vol. I.*, 90, questions, and with much force, the opinion advanced by Blackstone, and consider it as founded altogether upon an erroneous theory. *Barbeyrac*, in his notes on *Pufendorf, B* 4, *c.* 6, *note* 1, proves that the correct rule of the law of nature is, that the right acquired from taking possession does not cease with that possession, but that the consent of the proprietor to this renunciation must appear. This doctrine is conformable to the law of England, which considers a possession of twenty years as conferring a title, upon which a recovery in ejectment may be had. The title, therefore, exhibited by the plaintiff must prevail, unless a stronger one is made out by defendant.

3d. The infancy of the children of Gould takes away the presumption arising from their continued possession. This presumption is founded altogether upon a statute of England which is not in force in New Jersey.

KINSEY, C. J., delivered the opinion of the court.

This cause comes before us, involving principles which so rarely occur, that I cannot recollect ever having heard, read of, or met with any of a similar character.

It is an ejectment for the recovery of an island in the river Delaware, and neither of the contending parties sets up or pretends any title, derived either from the king or the proprietaries, from one of which sources every title heretofore brought before us for our decision has been deduced, or attempted to be deduced, and the legality and solidity of these foundations have never been questioned.

' [102] The ground of the plaintiff's claim, as it has been laid before us, appears to be an ancient possession in one Gould, continued by himself until his death, in 1743 ; in his widow from that period until her own death, in 1749 ; and in the daughters until 1756, at which period, as they state, (but no evidence of this fact appears,) one Logan forcibly dispossessed them, and has retained possession from that

time.   A complete deduction of title has been made out from the heirs of Gould to the lessors of the plaintiff.

The title on the part of the defendant commences with a possession by Logan, who sells his rights, by an informal kind of instrument, to Bristol, in 1766; Bristol conveyed to Ridley; Ridley to Yardley, in 1775; and Yardley to White, the defendant, in 1776, for a valuable consideration.   The paper title of the defendant has always been accompanied with the possession.

There are some circumstances attending the possession of Gould which merit consideration.   It was a possession of a very imperfect and vague description.   He appears to have built a small house, where he kept books and a table. Whether he ever slept in it, is uncertain from the evidence. He occasionally went to it for several years, during which time his family resided on his property on the adjacent shore of New Jersey.   He removed this small building some years before his death, and during the whole period of this posses-sion he never cleared, fenced or improved any part of the land; nor is this all which it is important to keep in mind. It has been further proved, that no exclusive property in this island was ever claimed by Gould, especially after the removal of his study; that it was common to everybody, and the neighbors were in the habit of driving their cattle upon it at pleasure.

On the contrary, the possession of the defendant, and of those under whom he claims, has been accompanied with the usual marks of property; they have fenced, cleared, built and otherwise improved it.

Much other evidence has been adduced, but the facts which I have stated seem to embrace all that is important in the present controversy.   In general, it may be remarked, [103] that the plaintiff claims under a priority of possession, or a possession of twenty years, which he contends he has proved.   Either of these grounds would be sufficient to war-rant a recovery against one circumstanced as the defendant is,

Den, ex dem. Tucker et al., v. White.

unless he has suffered his rights to expire and wear out in silence.

Our opinion must be wholly founded upon the possessory right of one or the other of the parties, and we are all of opinion that the possession proved in Gould, is not a title upon which a recovery can be had, for—

1st. He did no other act than to build a house, in which he occasionally read; he neither cleared, fenced, nor in any manner improved the land; it was apparently a possession limited to the convenience of a house or place of study, on an unoccupied island.

2d. He removed this small building some years prior to his death, and subsequent to this removal, it does not appear that either he or his wife exercised any other or higher acts of ownership than were exercised by every other person in the vicinity.

3d. The island appears to have been a kind of asylum or place of refuge to all who were desirous of avoiding the legal process of the two neighboring states.

A possession of this nature has no legal operation, and can confer no legal title, especially against the right of the crown, which was *notum omnibus,* and which, whether righteously acquired from the Indian primitive owners, or not, must be recognized and acquiesced in by all its own subjects.

The possession of Gould thus acquired, and thus retained, does not appear to bear any marks of a claim or title to an exclusive appropriation or property. No such intention on his part is apparent in any of his acts. He did what every other person might have done, and little more than every one in the neighborhood was accustomed to do; he used the island for a present cconveniency, without any design of acquiring a legal, future or substantial interest in the soil. Even this species of possession, vague and imperfect as it unquestionably was, appears to have been relinquished some time previous to his death, and we are of opinion that the facts proved did amount to a full and complete relinquish-

ment. No claim derived under his possession was ever again [104] set up, until others had occupied the vacant situation, and acquired such rights as this mode of acquisition and tenure can give.

A priority of possession, within the limits of an established government, or a possession for a series of years, accompanied with marks of exclusive property, (and without these marks no possession can give a title,) is, and ought to be, uniformly recognized as one means of acquiring an exclusive property. The right founded, however, on possession only, must be. deduced from a known, visible, adverse possession and use, not a mere paper or unknown claim. It is the interest of all governments to put an end to controversies, particularly when real estate is the subject matter of dispute, and a continued and uninterupted possession furnishes a strong presumption of title in the possessor, and of acquiescence on the part of every other person. But a possession like Gould's, of an island, antecedent to the establishment of any government, or the settlement of any jurisdiction, unaccompanied with any marks of a sole or separate property; where no presumption can be raised in favor of the original validity of the title, because there was no one from whom such title could have been acquired; where the presumption arising from the acquiescence of others is rebutted by the circumstance that there was no government or legal tribunal exercising jurisdiction over this land, is not, in our opinion, a sufficient title to recover in an action of ejectment.

This would be our opinion, provided the possession of the defendant had been too recent to have raised any presumption in favor of his claim. But the circumstances of his case are more favorable. We think the facts proved are sufficient. evidence of an adverse possession, at least from 1766, attended with every mark of separate appropriation and claim to the fee. Clearly, then, the plaintiff has shown no title upon which he could recover, if none had been exhibited on the part of the defendant, and unquestionably he has pro-

Den, ex dem. Tucker et al., v. White.

duced none to warrant a recovery against a *bona fide* purchaser, as the defendant is, who gave a valuable consideration for the land, and who, by his continued and undisputed separate possession, has cured every original defect in his title.

Let the plaintiff be called and non-suited.